# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

JESUS TIJERINA GARZA,

    Petitioner,

vs.                          Case No.:    3:15-cv-203-J-32JRK
                                                          3:11-cr-138-J-32JRK

UNITED STATES OF AMERICA,

    Respondent.

_____/

## ORDER

This case is before the Court on Petitioner Jesus Tijerina Garza's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1)[1], Supporting Memorandum (Civ. Doc. 7-2)[2], and Affidavit (Civ. Doc. 8). The United States has responded (Civ. Doc. 6, Civ. Doc. 9), and Petitioner has replied (Civ. Doc. 11). Pursuant to Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court has determined that an evidentiary hearing is not necessary to decide the petition. See Aron v. United States, 291 F.3d 708, 714–15 (11th Cir. 2002) (an evidentiary hearing on a § 2255 motion is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming that

---

[1] References to the docket in the underlying criminal case, United States vs. Jesus Tijerina Garza, Case No. 3:11-cr-138-J-32JRK, will be denoted as "Crim. Doc. __." Citations to the civil § 2255 docket, Case No. 3:15-cv-203-J-32JRK, will be denoted as "Civ. Doc. __."

[2] Petitioner moved for leave to file the supplemental brief (Civ. Doc. 7), and that request is due to be granted.

1

the facts he alleges are true, he still would not be entitled to any relief). For the reasons set forth below, Petitioner's Motion to Vacate is due to be denied.

## I. Background

Petitioner played a high-level role in a network of individuals who trafficked large quantities of cocaine between Mexico, southern Georgia, and northern Florida between 2007 and 2010. One by one, members of the network were arrested until eventually, so was Petitioner. On May 26, 2011, a federal grand jury indicted Petitioner on one count of conspiracy to distribute five kilograms or more of cocaine and 100 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841 and 846. (Crim. Doc. 1, Indictment). Less than a month afterward, Petitioner was arrested in Texas and transferred to the Middle District of Florida.

On March 9, 2012, after the Court denied a motion to suppress, Petitioner pled guilty to the conspiracy charge without a plea agreement. (See generally, Crim. Doc. 234, Plea Transcript). While Petitioner disputed precisely when he joined the conspiracy and how much cocaine was involved, he admitted that he entered into an agreement with several individuals to distribute cocaine, that he knew the unlawful purpose of the plan when he joined it, and that the object of the plan was to distribute at least five kilograms of cocaine. (Id. at 54-55; see also Crim. Doc. 225, Defendant's Notice of Maximum Penalties, Elements of Offense, Personalization of Elements, and Factual Basis). The Court accepted Petitioner's plea and adjudicated him guilty. (Crim. Doc. 229, Acceptance of Guilty Plea).

On October 18, 2012, the Court held a daylong evidentiary sentencing hearing, at which it determined that (1) Petitioner's role in the conspiracy involved at least 150 kilograms of cocaine, (2) Petitioner possessed a firearm in connection with the conspiracy, for purposes of a two-level weapons enhancement under U.S.S.G. § 2D1.1(b)(1), and (3) Petitioner played a managerial or supervisory role, for purposes of a three-level enhancement under U.S.S.G. § 3B1.1(b). (See generally, Crim. Doc. 322, Sentencing Transcript). The Court calculated Petitioner's advisory Guidelines sentencing range to be 360 months-to-life in prison, based on a total offense level of 41 and a Criminal History Category of II. (Id. at 188). Ultimately, the Court sentenced Petitioner to a term of 480 months in prison. (Id. at 210).

Petitioner filed a timely appeal, in which he challenged the Guidelines enhancement for his role as a manager or supervisor. United States v. Garza, 545 F. App'x 955, 955 (11th Cir. 2013). The Eleventh Circuit rejected Petitioner's argument, finding that, based on the testimony at the sentencing hearing, "Garza controlled several members of the conspiracy by providing cocaine for them to distribute and by requiring them to return the proceeds of sales to him." Id. Thus, the Eleventh Circuit affirmed his conviction and sentence. Id. at 956. Petitioner did not request certiorari review.

Petitioner timely filed the instant Motion to Vacate, in which he raises one ground of ineffective assistance of plea counsel and two grounds of ineffective assistance of appellate counsel. He also challenges the constitutionality of 28 U.S.C. § 2255(h). The Court discusses those grounds below.

3

## II. Discussion

Under Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C §2255(a) (2008). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamental as to cause a complete miscarriage of justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184-86 (1979). A petitioner's challenge to his sentence based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered in a collateral attack. United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992).

To succeed on a claim of ineffective assistance of counsel, a petitioner must show both (1) that counsel's performance was deficient, and (2) that as a result of counsel's deficient performance, the petitioner suffered prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). In determining whether counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994). The petitioner must show, in light of all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance." Id. To show that counsel's deficient performance prejudiced the defendant, the petitioner must show that there is a reasonable

4

probability that, but for counsel's error, the result of the proceeding would have been different. Id. at 1036-37 (citing Strickland, 466 U.S. at 694). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694. In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. Id. at 695. However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697; see also Wellington v. Moore, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's] ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

### A. Ground One

In Ground One, Petitioner claims that plea counsel, Frank Perez,[3] gave ineffective assistance by misleading him about the effect of pleading guilty on his right to appeal the denial of his motion to suppress. (Civ. Doc. 1 at 4-5; Civ. Doc. 7-2 at 1-3).[4] Specifically, Petitioner asserts that Perez advised him that if he pled guilty, he

---

[3] When he pled guilty, Petitioner was represented by two attorneys, Perez and Clark Birdsall.

[4] Before pleading guilty, Petitioner moved to suppress a red SUV seized from a rural property he owned in Reddick, Florida, along with evidence of contraband and drug related activity that was seized from a mobile home on the property. (Crim. Doc. 91, Motion to Suppress). Petitioner argued that the search warrant, which authorized officers to search only the red SUV, did not establish probable cause, and that exigent circumstances did not permit the officers to search the mobile home. (continued)

5

could still raise the suppression issue on appeal. Petitioner claims that he wanted to go to trial, but Perez and Birdsall talked him out of doing so, explaining that a guilty plea would be best in light of the denial of the motion to suppress. (Civ. Doc. 7-2 at 2). Petitioner contends that Perez's misadvice rendered his guilty plea unknowing and involuntary. (Civ. Doc. 7-2 at 1-3).

This claim lacks merit because (1) the record undermines the contention that plea counsel assured Petitioner he could still appeal the suppression issue, and (2) even if counsel did misadvise Petitioner, the Court independently informed Petitioner that by pleading guilty he waived the right to challenge the manner in which the government obtained the evidence, and Petitioner pled guilty anyway.

To begin with, the record shows that Petitioner's counsel gave him no assurances regarding his ability to appeal the suppression issue. Toward the end of the plea colloquy, the following exchange occurred:

> THE COURT: Has anyone made any promises or assurances to you of any kind to get you to plead guilty?
>
> DEFENDANT: No, sir.

---

Following an evidentiary hearing (see Crim. Doc. 109, Suppression Hearing Transcript), the Honorable James R. Klindt, United States Magistrate Judge, issued a Report and Recommendation, in which he recommended that the motion to suppress be denied (Crim. Doc. 161, Suppression R&R). Judge Klindt recommended that Petitioner had no expectation of privacy in the SUV or the mobile home because they had been abandoned, as evidenced by their unkempt condition, surveillance that indicated nobody entered or used the property between October 2010 and July 7, 2011 (when the search occurred), and other circumstances indicating abandonment. (Suppression R&R at 2-3, 25-35). Alternatively, Judge Klindt recommended that there was adequate probable cause to justify the search warrant of the red SUV. (Id. at 35-36). After considering objections, this Court adopted the R&R and denied the motion to suppress. (Crim. Doc. 220, Order Denying Motion to Suppress).

6

***

| | |
|---|---|
| THE COURT: | All right. Mr. Duva, as counsel for the United States, and, Mr. Birdsall, as counsel for Mr. Garza, do you assure the court that as far as you know no assurances, promises, or understandings have been given to Mr. Garza as to a disposition of his case, Mr. Duva? |
| MR. DUVA: | I can so assure the court on behalf of the government, Your Honor. |
| THE COURT: | Thank you.<br><br>Mr. Birdsall? |
| MR. BIRDSALL: | The only thing I've told my client is if he pleads instead of going to trial he'll get two acceptance points. <u>So other than that, no</u>. |

(Crim. Doc. 234 at 57-58) (emphasis added).[5] Petitioner did not dispute counsel's representation. Therefore, the record suggests that counsel did not give Petitioner any assurance that by pleading guilty he could still appeal the suppression issue and later withdraw his guilty plea, as Petitioner now claims. (<u>See</u> Civ. Doc. 7-2 at 2).

Moreover, even if counsel had misadvised Petitioner that he would be able to appeal the suppression issue, the Court informed him otherwise. The following exchange occurred earlier during the plea colloquy:

| | |
|---|---|
| THE COURT: | Okay. Mr. Garza, you may have defenses to this charge. But if you plead guilty, you waive and give up your right to assert these defenses.<br><br>Has Mr. Birdsall explained the defenses that might be available to you? |

---

[5] Later, Petitioner did get the benefit of a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, but the Magistrate Judge clarified that such a reduction was not guaranteed. (<u>Id.</u> at 58-59).

7

| | |
|---|---|
| DEFENDANT: | Yes, sir. |
| THE COURT: | All right. By pleading guilty you also waive and give up your right to challenge the way the government obtained any evidence, statement, or confession. Also, by pleading guilty, you lose the right to challenge on appeal any rulings which the court has made in your case.<br><br>Do you understand that? |
| DEFENDANT: | I understand, sir. |
| THE COURT: | <u>All right. Now, particularly in your case, you had a motion to suppress evidence related to a vehicle at the residence and a search of the residence. And the court denied the motion to suppress.</u><br><br><u>If you plead guilty today, you will not be able to appeal that ruling or any other ruling the court has made in your case up to this point.</u><br><br><u>Do you understand that?</u> |
| DEFENDANT: | <u>I understand, sir.</u> |
| THE COURT: | <u>And you're willing to do that?</u> |
| DEFENDANT: | <u>Yes, sir.</u> |
| THE COURT: | <u>All right. Do you have any questions about that at all?</u> |
| DEFENDANT: | <u>No, sir.</u> |

(Crim. Doc. 234 at 18-19) (emphasis added). Thus, the record demonstrates that Petitioner understood that by pleading guilty, he waived the right to appeal the denial

8

of the motion to suppress. Petitioner accepted that waiver, and he proceeded to plead guilty nonetheless.[6]

When the judge presiding over a plea colloquy correctly advises a defendant about the consequences of pleading guilty, the judge's advice cures any contrary advice by counsel. See e.g., United States v. Shedrick, 493 F.3d 292, 299 (3d Cir. 2007) ("Indeed, we have long held that an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where, as here, an adequate plea hearing was conducted.") (citations omitted); United States v. Wilson, 245 F. App'x 10, 12 (11th Cir.

---

[6] After recognizing that the transcript of the plea colloquy contradicted his claim, Petitioner asserted for the first time that the English-to-Spanish translator also told him that he could appeal the denial of the motion to suppress. (Civ. Doc. 7-2 at 2; Civ. Doc. 8 at 2, ¶ 11). As such, he claims he was never aware that pleading guilty would render him unable to appeal the suppression issue. (Civ. Doc. 8 at 2, ¶ 12).

This claim is not credible. First, the translator swore to translate the proceedings truly and accurately, and the Court has no doubt that she did so. (Crim. Doc. 234 at 2). Petitioner provides nothing from the translator or any other witness to corroborate his allegation. All he provides are his own self-serving affidavit and memorandum, which are insufficient to require an evidentiary hearing, particularly in the face of a Rule 11 colloquy that shows he knowingly waived the right to appeal the suppression issue. See Winthrop-Redin v. United States, 767 F.3d 1210, 1217 (11th Cir. 2014) (discussing Matthews v. United States, 533 F.2d 900, 902 (5th Cir. 1976), and Bryan v. United States, 492 F.2d 775, 779-80 (5th Cir. 1974)). Second, the magistrate judge told Petitioner in more ways than one that he would waive the right to raise any suppression issues by pleading guilty. (See Crim. Doc. 234 at 18-19). Petitioner does not allege, nor does he explain how, all of these warnings were mistranslated so as to make him believe he could appeal the suppression ruling. Third, even if the translator misspoke, the record shows that Petitioner understands English well enough that he would have understood the Court independently of the translator. Indeed, Petitioner stated at the plea hearing that he understands some English. (Id. at 6). Moreover, Petitioner's pro se filings, which are all signed by Petitioner himself and apparently were written without the assistance of a third party, demonstrate fluency in English. (See, e.g., Civ. Doc. 1, Civ. Doc. 4, Civ. Doc. 7, Civ. Doc. 7-2, Civ. Doc. 8, Civ. Doc. 11). Thus, the Court finds that Petitioner adequately understood the consequences of pleading guilty as explained to him at the plea hearing.

9

2007) ("During the plea colloquy, the district court itself explained to Wilson—in detail—the consequences of the plea agreement, range of punishment, and sentencing contingencies before accepting Wilson's guilty plea. Thus, any failure on the part of Wilson's counsel to clearly explain the possible punishment was cured by the district court."); Gambrel v. United States, 2013 WL 3934205, at *11 (S.D. Ga. July 30, 2013) ("So long as the Rule 11 court correctly advises a defendant of the minimum and maximum penalties he faces as a result of pleading guilty, a petitioner fails to establish prejudice by alleging that counsel gave erroneous advice about the sentence he might receive or the possibility for enhancements under the Sentencing Guidelines."). The Court's clear warning that Petitioner would lose the right to appeal the suppression ruling by pleading guilty, and Petitioner's acceptance of that warning, would have corrected contradictory advice by his attorney. Therefore, even if counsel misadvised Petitioner that he could still appeal the denial of the motion to suppress, Petitioner did not suffer prejudice because the Court accurately notified him of the consequences of pleading guilty, Petitioner stated that he understood, and he proceeded to plead guilty anyway. As such, the record refutes Ground One and relief is due to be denied.

**B. Ground Two**

In Ground Two, Petitioner claims that appellate counsel gave ineffective assistance by failing to raise two issues before the Eleventh Circuit: (1) a claim that his guilty plea was unknowing and involuntary based on plea counsel's advice concerning his ability to appeal the denial of the motion to suppress, and (2) a

10

challenge to the two-level Guidelines enhancement for possessing a firearm in connection with the drug conspiracy, under U.S.S.G. § 2D1.1(b)(1). (Civ. Doc. 1 at 6).

Strickland applies when reviewing the effectiveness of appellate counsel. Smith v. Robbins, 528 U.S. 259, 285 (2000). Thus, a petitioner raising an ineffective assistance claim relating to the performance of appellate counsel must show that (1) counsel's performance fell below an objective standard of reasonableness, and (2) the outcome of his appeal would have been different, but for the unreasonably deficient performance. Black v. United States, 373 F.3d 1140, 1142 (11th Cir. 2004). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones v. Barnes, 463 U.S. 745, 751-52 (1983). As such, "[a]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith, 528 U.S. at 288. "[I]t is still possible to bring a Strickland claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent." Id.

Here, appellate counsel was not ineffective for not challenging the voluntariness of Petitioner's guilty plea or the weapons enhancement. The record shows that neither claim had merit. With respect to the guilty plea, as explained in Ground One, the record shows that Petitioner fully understood that he would waive the right to present any defenses or raise any suppression issues on appeal if he pled guilty. In light of the record of the plea colloquy, any challenge to the knowing and voluntary nature of the

guilty plea would have lacked merit. As such, appellate counsel did not perform unreasonably by declining to raise this issue. Diaz v. Sec'y, Dep't of Corr., 402 F.3d 1136, 1145 (11th Cir. 2005) ("[N]onmeritorious claims that are not raised on appeal do not constitute ineffective assistance of counsel.") (citing, e.g., United States v. Nyhuis, 211 F.3d 1340, 1346 (11th Cir. 2000)).

With respect to the Guidelines weapons enhancement, it was equally reasonable for counsel not to raise this issue on appeal. Under U.S.S.G. § 2D1.1(b)(1), a two-level increase applies if the defendant possessed a dangerous weapon, including a firearm. "The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." § 2D1.1, Application Note 3(A) (2011).

> The government bears the initial burden of showing, by a preponderance of the evidence, that a firearm was "present" at the site of the charged conduct or that the defendant possessed it during conduct associated with the offense of conviction. [United States v. Stallings, 463 F.3d 1218, 1220 (11th Cir. 2006)]. To meet its burden, the government must show that the firearm had "some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." Id. (internal quotation marks omitted). If the government meets this initial burden, the burden then shifts to the defendant, who must establish that a connection between the weapon and the offense was "clearly improbable." Id.; see also United States v. Carillo–Ayala, 713 F.3d 82, 90 (11th Cir. 2013) (noting that although the government must show "mere presence," the guideline places a "heavy burden of negation" on the defendant).

United States v. George, 872 F.3d 1197, 1204 (11th Cir. 2017).

Here, testimony and video evidence from the sentencing hearing demonstrated, by at least a preponderance of the evidence, that two firearms were present at the site of conduct connected with the conspiracy. DEA Special Agent Douglas Griffith testified

12

that when he and other agents searched Petitioner's mobile residence in Reddick, Florida, they found a gun safe containing two firearms. (See Crim. Doc. 322 at 115, 123). A video recording of the search depicted the safe and the firearms as well. (See id. at 115, 158-59). In the same gun safe, the agents found a ledger with written notations in Spanish. (See id. at 115-16, 158, 182). As DEA Special Agent Florentino Rosales testified, the ledger was a record of incoming and outgoing shipments of kilogram-quantities of cocaine. (Id. at 132-41). Additionally, in the same residence as the gun safe and the drug ledger, the agents found cabinet bases with cutout areas containing shrink wrap, duct tape, and pieces of paper with money denominations written on them. (Id. at 114-15). Agent Griffith explained that shrink wrap and duct tape are typically used in the drug trade to wrap controlled substances like marijuana and cocaine, as well as to package money for transportation back to Mexico. (Id. at 115). Thus, the evidence persuasively showed that guns were present at the location of Petitioner's illicit drug trafficking activities, and Petitioner failed to show that it was "clearly improbable" the guns were related to the drug conspiracy. The two-level weapons enhancement was properly applied, and for that reason, appellate counsel did not perform unreasonably by not challenging the enhancement on appeal. Diaz, 402 F.3d at 1145. Therefore, relief on Ground Two is due to be denied.

### C. Ground Three

In Ground Three, Petitioner raises two additional claims of ineffective assistance of appellate counsel. Petitioner argues that counsel was ineffective for failing to challenge (1) the finding that Petitioner was responsible for 150 kilograms

13

of cocaine, and (2) the forfeiture of "property located on his land consisting of heavy construction equipment." (Civ. Doc. 1 at 7). Neither claim has merit.

Under the Sentencing Guidelines governing at the time, a base offense level of 38 applied if the crime involved 150 kilograms or more of cocaine. U.S.S.G. § 2D1.1(c)(1) (2011). For Guidelines purposes, the government need only prove the drug quantity by a preponderance of the evidence. United States v. Almedina, 686 F.3d 1312, 1315 (11th Cir. 2012) (citation omitted). At the sentencing hearing, the government presented evidence and testimony from multiple witnesses showing that the Petitioner's role in the conspiracy involved, at a minimum, 150 kilograms of cocaine. For instance, Jose Juan Solorio, a drug dealer, testified that Petitioner delivered him 40 kilograms of cocaine in May 2010 (Crim. Doc. 322 at 18-19), followed by six to seven additional deliveries of 12 to 15 kilograms each over the following months (id. at 25). The total weight of Petitioner's deliveries to Solorio alone would be between 112 and 145 kilograms. Additionally, Huber Dominguez-Diaz, another dealer, testified that Petitioner supplied him and his partner, Agustin Santos-Garcia, with cocaine beginning in March 2009. (Id. at 46). Although Dominguez-Diaz did not recall the exact number of transactions or amounts of cocaine that he and Petitioner were involved in, he did testify that he and Santos-Garcia received 7 to 10 kilograms from Petitioner every one to two months, including 15 kilograms on one occasion. (Id. at 47-48). Santos-Garcia testified that, altogether, Petitioner had supplied them with 25 to 30 kilograms of cocaine. (Id. at 71). Yet another dealer, Solomon Robles, testified that

Petitioner supplied him and his wife, Leticia Santos-Garcia, with a total of 160 to 200 kilograms of cocaine. (Id. at 83-84, 90).

In addition to the witness testimony, the government introduced the drug ledger found in Petitioner's gun safe. As interpreted by Agent Rosales, who had experience investigating Mexican drug cartels, the ledger was a record of inbound and outbound shipments of kilogram quantities of cocaine. Agent Rosales testified that the ledger indicated that on April 24, 2010, Petitioner received a shipment of 100 kilograms of cocaine, 97 of which were good and three of which were wet, and that Petitioner paid $27,000 per kilogram. (Id. at 134-35). A later entry indicated that on May 10, 2010, Petitioner received another shipment of 100 kilograms of cocaine, 95 of which were good and five of which were bad, with Petitioner again paying $27,000 per kilogram. (Id. at 135). The ledger further indicated that Petitioner received additional shipments of 100 kilograms or more of cocaine on May 27, 2010 and June 24, 2010. (Id. at 135-36). Furthermore, the ledger reflected that after Petitioner received these cocaine shipments, they were sent out and resold for a profit. (Id. at 134-38). Thus, the ledger by itself tended to prove that Petitioner was involved in trafficking 400 kilograms or more of cocaine.

In tandem with the witness testimony, this evidence led the Court to conclude that Petitioner was responsible for 150 kilograms or more. (Id. at 181). Indeed, the Court characterized the evidence of the drug quantity attributable to Petitioner as "overwhelming." (Id.). The evidence was so significant that the Court remarked that "even if [the government's] burden was beyond a reasonable doubt, [it] would make

the same finding" as to the drug quantity. (Id. at 180). Accordingly, any challenge on appeal to the drug quantity finding would have lacked merit, and it was not unreasonable for appellate counsel not to raise this issue.

Likewise, appellate counsel was not ineffective for not challenging the forfeiture of "heavy construction equipment" on Petitioner's property. The record reflects that the Court ordered forfeiture only of Petitioner's real property in Florida and the red SUV he used to transport cocaine. (Crim. Doc. 335, Final Judgment of Forfeiture; Crim. Doc. 383, Amended Final Order of Forfeiture). There was no forfeiture of "heavy construction equipment" in the first place, and as such, there was nothing to appeal along those lines. As such, relief on this ground is due to be denied.

### D. Ground Four

Finally, Petitioner argues that the "second or successive" provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA) are "incoherent" and unconstitutional. (Civ. Doc. 1 at 8). 28 U.S.C. § 2255(h) states:

> A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain —
>
> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

Petitioner has no standing to challenge this provision, however, because he has suffered no injury from § 2255(h)'s restrictions. See Spokeo, Inc. v. Robins, 136 S. Ct.

1540, 1548 (2016) (in order to have standing, a party must establish, among other things, that he suffers from an "actual or imminent" invasion of a legally protected interest) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). As Petitioner has filed a timely, initial § 2255 motion which nobody has asserted is an unauthorized second or successive petition, he cannot point to any actual or imminent harm caused by § 2255(h)'s requirements. Even if he could, his claim would fail because the Supreme Court has upheld the constitutionality of AEDPA's restrictions on second or successive habeas petitions. Felker v. Turpin, 518 U.S. 651, 664 (1996). Accordingly, relief on Ground Four is due to be denied.

Having considered each of Petitioner's claims for relief, and finding each one to lack merit, it is hereby **ORDERED:**

1. Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1) is **DENIED**.
2. Petitioner Jesus Tijerina Garza's Motion for Leave to File a Memorandum in Support (Civ. Doc. 7) is **GRANTED**. The Court has considered the arguments set forth in the memorandum (Civ. Doc. 7-2).
3. The Clerk shall enter judgment in favor of the United States and against Petitioner, and close the file.

**CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district

court must first issue a certificate of appealability (COA). Id. "A [COA] may issue… only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Petitioner has not made the requisite showing in these circumstances. Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** at Jacksonville, Florida this 5th day of February, 2018.

_____
TIMOTHY J. CORRIGAN
United States District Judge

lc 19

Copies:
Counsel of record
Pro se petitioner